Nos. 20-2047, 20-2049

IN THE

# United States Court of Appeals for the Federal Circuit

*Cisco Systems, Inc.*,

*Appellant*,

*v.*

*Ramot at Tel Aviv University Ltd.*

*Appellee*

*Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board Nos. IPR2020-00122 & IPR2020-00123*

**Corrected Brief of *Amicus Curiae* David E. Boundy, in Support of Neither Party**

September 15, 2020

DAVID E. BOUNDY
CAMBRIDGE TECHNOLOGY LAW LLC
P.O. BOX 590638
NEWTON, MA 02459
(646) 472 9737
DavidBoundyEsq@gmail.com
*Amicus Curiae*

## CERTIFICATE OF INTEREST

Counsel for *amicus curiae* certifies the following:

1. The full name of every party or *amicus* represented by me is:

   David E. Boundy.

2. The names of the real parties in interest represented by me as *amici* are:

   As named in 1.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the *amici* represented by me are:

   None

4. The names of all law firms, partners, and associates that have appeared for the party or *amici* now represented by me in the trial court or agency or are expected to appear in this court are:

   David E. Boundy, Cambridge Technology Law LLC

5. Related Cases, Fed. Cir. R. 47.4(a)(5) and 47.5(b).

   None.

6. Organizational victims and Bankruptcy cases.

   None.

Date: September 15, 2020

/s/ David E. Boundy
David E. Boundy
*Amicus Curiae*

# TABLE OF CONTENTS

***Page***

CERTIFICATE OF INTEREST ........................................................ i

TABLE OF CONTENTS ........................................................ ii

TABLE OF AUTHORITIES ........................................................ iii

IDENTITY AND INTEREST OF AMICUS CURIAE ............................ vi

STATEMENT UNDER FRAP 29(a)(4)(E) ........................................ vi

SUMMARY OF ARGUMENT ........................................................ 1

ARGUMENT ........................................................ 4

I. Cisco's appeal invokes the "shenanigans" prongs of 5 U.S.C. § 706(2)4

II. *Apple v. Fintiv* was not published in the Federal Register ............ 7

III. The PTAB erred in relying on the *NHK/Fintiv* "interpretative" rule as if it had binding effect ........................................ 11

IV. Relief ........................................................ 15

CONCLUSION ........................................................ 16

CERTIFICATE OF COMPLIANCE ........................................ xvii

# TABLE OF AUTHORITIES

***Page(s)***

**Cases**

*Appalachian Power Co. v. EPA*, 208 F.3d 1015 (D.C. Cir. 2000) ..........14

*Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 (PTAB Mar. 20, 2020) (precedential) ........................................................ 8, 11, 13, 15

*Aqua Products, Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017)....... passim

*Batterton v. Marshall*, 648 F.2d 694 (D.C. Cir. 1980) ............................12

*Cubanski v. Heckler*, 781 F.2d 1421 (9th Cir. 1986)...............................12

*Cuozzo Speed Techs., LLC v. Lee*, 136 S.Ct. 2131 (2016) ............... passim

*Dalton v. United States*, 816 F.2d 971 (4th Cir. 1987) .............................7

*Dickinson v. Zurko*, 520 U.S. 150 (1999) .................................................1

*Facebook, Inc. v. Windy City Innovations, LLC*, 953 F.3d 1313, *reaffirmed on rehearing* 2020 WL 5267975 (Fed. Cir. Sep. 4, 2020) ............................................................................................... passim

*Gray v. Sec'y of Veterans Affairs*, 884 F.3d 1379 (Fed. Cir. 2018)...........8

*Kooritzky v. Reich*, 17 F.3d 1509 (D.C. Cir. 1994) ....................................2

*NLRB v. Wyman-Gordon Co.*, 394 U.S. 759 (1969) ................................15

*Perez v. Mortgage Bankers Assn.*, 575 U.S. 92 (2015) ......................10, 12

*SAS Institute Inc. v. Iancu,* 138 S.Ct. 1348 (2018)......................... passim

*Thryv, Inc. v. Click-to-Call Technologies, LP*, 140 S.Ct. 1367 (2020) ......2

*United States v. Picciotto*, 875 F.2d 345 (D.C. Cir. 1989).......................14

**Statutes**

35 U.S.C. § 316 ........ 3

35 U.S.C. §§ 311-329 ........ 2

44 U.S.C. § 3506 ........ 13

44 U.S.C. § 3507 ........ 13

5 U.S.C. § 552 ........ 8, 13

5 U.S.C. § 553 ........ 12, 13

5 U.S.C. § 559 ........ 1

5 U.S.C. § 601 *et seq.* ........ 13

5 U.S.C. § 704 ........ 2, 5

5 U.S.C. § 706 ........ passim

**Regulations**

5 C.F.R. § 1320.10 ........ 12

**Rules**

Executive Order 12866 ........ 10, 13

Executive Order 13771 ........ 10, 13

Patent Trial and Appeal Board, *Standard Operating Procedure 2* ....... 14

**Other Authorities**

David E. Boundy, *The PTAB is Not an Article III Court, Part 3: Precedential and Informative Opinions*, September 2019 update, http://ssrn.com/abstract=3258694 .......... 12

Patent Trial and Appeal Board, *Precedential and Informative Decisions*, https://www.uspto.gov/patents-application-process/patent-trial-and-appeal-board/precedential-informative-decisions .......... 13

## IDENTITY AND INTEREST OF AMICUS CURIAE

**David E. Boundy** is an individual patent attorney in Cambridge, MA, with an interest in the intersection of administrative law and intellectual property law. Mr. Boundy has no relationship to any of the parties, and no current client with a direct interest in the outcome of this appeal. Mr. Boundy's interest is that of a concerned individual, in the just and consistent application of the law.

Consent was requested of all parties by email on September 12. Appellant Cisco and intervenor Patent and Trademark Office (PTO) consented by email. Ramot University did not respond to object.

## STATEMENT UNDER FRAP 29(a)(4)(E)

No party or party's counsel authored this brief in whole or in part.

No party or party's counsel contributed money that was intended to fund preparing or submitting this brief.

No person, other than *amici*, their members, and counsel, contributed money intended to fund preparing or submitting this brief.

## SUMMARY OF ARGUMENT

We haven't seen Cisco's opening brief yet, so it's impossible to know today whether this Court will or will not have jurisdiction over the issues Cisco eventually presents. However, a number of reviewable issues are readily apparent if Cisco chooses to raise them.

The Supreme Court has held twice that PTAB institution decisions are reviewable under the Administrative Procedure Act (APA), particularly the "arbitrary and capricious," "not in accordance with law," and "in excess of statutory authority or limitation" prongs of 5 U.S.C. § 706(2)(A)-(D). *SAS Institute Inc. v. Iancu,* 138 S.Ct. 1348, 1359 (2018) (reviewable issues include "shenanigans" such as 5 U.S.C. §§ 706(2)(A) "not in accordance with law" and (C) "in excess of statutory jurisdiction, authority, or limitations"); *Cuozzo Speed Techs., LLC v. Lee*, 136 S.Ct. 2131, 2142 (2016) (noting reviewability for the full palette of "shenanigans" enumerated in 5 U.S.C. § 706(2)(A)-(D)); *see also Facebook, Inc. v. Windy City Innovations, LLC*, 2020 WL 5267975, at *6-*7 (Fed. Cir. Sep. 4, 2020) (*Thryv* does not preclude this Court's jurisdiction to review "in excess of statutory authority").

Displacing the APA requires express Congressional action. 5 U.S.C. § 559; *Dickinson v. Zurko*, 520 U.S. 150, 155 (1999). The AIA

doesn't displace the rulemaking provisions of the APA; it *adopts* them by requiring the Director to use *regulation*, not improvised procedures. Neither the AIA nor *Thryv, Inc. v. Click-to-Call Technologies, LP*, 140 S.Ct. 1367 (2020) contain the slightest suggestion that the AIA displaced APA rulemaking or APA reviewability of either adjudications or rulemaking. 35 U.S.C. §§ 311-329; *Thryv*, 140 S.Ct. at 1370-77; *Cuozzo*, 136 S.Ct. at 2141-42.

Where the APA applies, it is commonplace to attack an adjudication decision by attacking an underlying rule, or the procedures by which that rule was promulgated. 5 U.S.C. § 704; *Kooritzky v. Reich*, 17 F.3d 1509, 1513 (D.C. Cir. 1994).

Collateral attacks on an underlying rule are doubly appropriate when the agency used nonstatutory stealth procedures to adopt the rule. As this Court observed in March, the PTO's "precedential opinion" procedures deny third parties opportunity for direct judicial review of the rule. *Windy City*, 953 F.3d 1313, 1343 (Fed. Cir. 2020) (panel's unanimous additional views), *reaffirmed on rehearing* 2020 WL 5267975, at *25. The PTO's continued reliance on stealth procedures after this Court's observation suggest that avoidance of judicial review may well be an intentional goal. Whether or not evasion of judicial review is the PTO's conscious *goal*, the PTO's *practice* leaves appeal

from an institution adjudication as the first and only opportunity for a party to challenge defective rulemaking. If stealth rulemaking procedure is unreviewable in the context of this appeal, it's hard to see how procedurally-defective rules that narrow grants of institution would *ever* be reviewable. Such a far-reaching abrogation of the APA could not have been Congress' intent in requiring "regulation" for institution *rulemaking* while precluding review of institution *decisions*. The Supreme Court recognizes that the difference between an adjudication and an underlying rule may permit review despite a preclusion-of-review statute. *Compare* § 316(a)(2) *with Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 675 (1986) (statute that precludes review of Medicaid determinations "simply does not speak to challenges mounted against the *method* by which such [determinations are made] rather than the *determinations* themselves").

This Court has jurisdiction to review a number of procedural defects in the PTAB's precedential decisions, under various prongs of § 706. Set-aside of the PTAB's adjudications follows.

Cisco's brief argues that the Director and PTAB lack statutory authority to consider the timing of parallel litigation; alternatively, it may be that such authority exists under § 316(a)(2) and the PTAB's discretion to *not* institute. The scope of the PTAB's statutory authority

is prototypical of questions over which this Court has jurisdiction. *SAS*, 138 S.Ct. at 1359.

## ARGUMENT

### I. Cisco's appeal invokes the "shenanigans" prongs of 5 U.S.C. § 706(2)

*Cuozzo* distinguishes grounds arising under patent law (mostly precluded) from grounds arising under the APA (reviewable). A very long paragraph contrasts the two, and concludes:

> "[S]henanigans" may be properly reviewable … under the Administrative Procedure Act, which enables reviewing courts to "set aside agency action" that is "contrary to constitutional right," "in excess of statutory jurisdiction," or "arbitrary [and] capricious." *Compare* [Justice Alito's dissent], *with* 5 U.S.C. §§ 706(2)(A)-(D).

136 S.Ct. at 2141-42.

An agency's adjudication may be attacked by attacking an underlying rule, or the procedures by which that rule was promulgated. In *Aqua Products, Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017), the agency action directly under review was a PTAB adjudication. A majority of this Court found sufficient ambiguity in the statute that the PTO *could* have acted by regulation, and a different majority vacated the adjudication because of procedurally-defective rulemaking. Judge

Reyna's swing opinion consolidated the views of seven of the nine judges of this Court that reached the procedural defect issue: "The Patent Office cannot effect an end-run around [the APA] by conducting rulemaking through adjudication ..." *Id.* at 1339. *Windy City*'s "additional views" instructed essentially the same in March. 953 F.3d at 1342-43, *reaffirmed on rehearing* 2020 WL 5267975, at *22 (Director only has authority to promulgate rules by "*prescribing regulations*," emphasis the Court's). Remarkably, both involved a rule-by-precedential-decision essentially identical to the one in this appeal. It's not clear why the PTAB in May still thought that this issue needs a third decision, but here we are. As in *Aqua Products*, the Court has jurisdiction to vacate a PTAB adjudication because of underlying procedurally-defective rulemaking. 5 U.S.C. § 704, § 706(2)(D) ("without observance of procedure").

Several of the issues raised in Cisco's response to the Order to Show Cause slot into § 706 "shenanigans" pigeonholes:

- Cisco's argument based on defects of rulemaking procedure (Cisco's Response, ECF 15, at 13-15) invoke the "not in accordance with law," "in excess of statutory authority," and "without observance of procedure required by law" types of "shenanigans" reviewable under § 706.

- Cisco's questioning whether the PTAB may consider parallel district court litigation (ECF 15 at 16-18) could be recast as a question of the scope of the PTAB's statutory authority, reviewable under § 706(2)(C). *SAS*, 138 S.Ct. at 1359. Likewise, it presents an issue of "factors which Congress has not intended it to consider," a classic species of "arbitrary and capricious." § 706(2)(A); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983).

This Court may or may not agree with Cisco's arguments, but they are certainly within the Court's jurisdiction.

Likewise this Court will have jurisdiction over other issues that slot into § 706 pigeonholes for "shenanigans:"

- The PTAB's *NHK/Fintiv* rule was adopted "without observance of procedure required by law." Only the Director (not the PTAB) has authority to create rules of prospective effect, and that power may be exercised only by "regulation" (not by PTAB precedential decision). *Windy City*, 2020 WL 5267975, at *22. Example arguments over which this Court has jurisdiction are outlined in sections II and III, below.

- The PTAB's reliance on an invalidly-promulgated rule in deciding Cisco's IPR petition was "in excess of statutory authority" and "not

in accordance with law." Jurisdictionally-sound arguments are outlined in section III, below.

- After a unanimous panel of this Court wrote on March 18 that PTAB precedential opinions are not entitled to force of law as would bind the public under *Chevron* deference (or any other theory), *Windy City*, 2020 WL 5267975, at *22-*24, the PTAB's reliance on *NHK/Fintiv* as binding authority was "not in accordance with law" and "arbitrary and capricious." An example argument is set out in section III, below.
- The PTAB's refusal to consider Cisco's argument on an unlawful basis was "arbitrary and capricious." Where an agency has discretion, an agency may not arbitrarily tie its hands to avoid arguments that require exercise of that discretion. *Dalton v. United States*, 816 F.2d 971, 975 (4th Cir. 1987).

In a Show Cause posture, this Court has jurisdiction. Cisco's principal brief will either work within the jurisdictional pigeonholes explained in *Cuozzo* and *SAS Institute* or not, and the Court may reconsider jurisdiction when we have Cisco's principal brief.

## II. *Apple v. Fintiv* was not published in the Federal Register

The APA requirement for publication requires that where an agency intends to rely on precedential decisions as "rules of procedure,

… substantive rules of general applicability… [or] statements of general policy or interpretations of general applicability formulated and adopted by the agency," they must be published in the Federal Register. 5 U.S.C. § 552(a)(1)(C) and (D). The consequence of non-publication is simple: "Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published." § 552(a)(1).

Alternatively, the PTAB has the option to publish its precedential decisions on its web site, § 552(a)(2), so long as the PTAB cites them only as nonbinding advisory rules. Judge Taranto, in *Gray v. Sec'y of Veterans Affairs*, 884 F.3d 1379, 1380-81 (Fed. Cir. 2018) gives a good case synthesis.

*Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 (PTAB Mar. 20, 2020) (precedential) was designated "precedential" after Cisco completed its briefing, so Cisco had no "actual and timely notice." And despite the simplicity and clarity of the statutory obligation to publish in the Federal Register, the PTAB never published *Fintiv* (or ***any*** other precedential decision) in the Federal Register. But the PTAB relied on *Fintiv* to preclude Cisco's arguments. So Cisco is entitled to a do-over,

with *Fintiv* given only the weight appropriate earned by its rulemaking procedure.

Why would an agency rely on precedential decisions, rather than the APA? Why not interim rules published in the Federal Register? Every other agency follows the law—a search for the term "interim rule" at federalregister.gov gives over 9000 hits. Why is the PTAB different? After two adverse decisions? Several possible reasons come to mind:

- Publication in the Federal Register is the single strongest differentiator (though not 100% determinative) between "final agency action" that triggers the right to judicial review vs. unreviewable guidance that evades this Court's jurisdiction.
- Non-publication means no public comment that might inform the PTO of adverse consequences and costs.
- Publication of a Federal Register notice doesn't in and of itself trigger an obligation for executive branch oversight by the Office of Information and Regulatory Affairs (OIRA) and Small Business Administration. But it does give those oversight agencies a heads up. That, in turn, might initiate questions that could require the PTO to do a cost-benefit analysis and submit the rule for review to OIRA under the Paperwork

Reduction Act, to do an analysis of economic impacts on small entities under the Regulatory Flexibility Act, a cost-benefit analysis under Executive Order 12866, a request for waiver from the two-for-one and regulatory cost reduction principles of Executive Order 13771, etc.

- Non-publication evades ***a lot of hard work***: analyzing cost-benefit, compliance with executive orders, preparing a submission for inter-agency review, responding to public comments...

Perhaps the PTO will explain virtuous reasons for non-publication; I am unaware of any. In *Aqua Products* and *Windy City*, this Court soundly rejected the PTO's claim for force of law for precedential decisions. This Court may infer that continued reliance on precedential decision rather than the Federal Register is an active choice in favor of the dubious goals listed above.

The PTO made a choice. The choice has consequences:

- Lower procedure means lower binding effect. *Perez v. Mortgage Bankers Assn.*, 575 U.S. 92, 97 (2015).
- Rules that haven't undergone cost-benefit analysis are at higher risk of unintended adverse consequences.

- Procedurally-deficient rules, and all adjudications based on them, are subject to attack.

A rule that should have been published in the Federal Register, but wasn't, was "without observance of procedure," and may not "adversely affect" any party. An adjudication that relied on that rule is "arbitrary and capricious," and barred by § 552(a)(1). These issues are within the jurisdiction in this Court under *Cuozzo* and *SAS Institute*.

## III. The PTAB erred in relying on the *NHK/Fintiv* "interpretative" rule as if it had binding effect

There's nothing illegal about *designating* precedential decisions (except insofar as the designation is misleading[1]); the question is the PTAB's *reliance* on them for force of law against the public, when the PTAB skipped rulemaking procedure. This Court has held—***twice***—that PTAB precedential decisions are not entitled to *Chevron* deference (or force of law on any other theory). *Aqua Products*, 872 F.3d at 1339; *Windy City*, 2020 WL 5267975, at *22-*24. The PTAB erred in giving dispositive weight to the *Fintiv* factors, and foreclosing Cisco's

---

[1] Dissemination of misleading information violates the PTO's *Information Quality Guidelines*. https://www.uspto.gov/learning-and-resources/information-quality-guidelines.

arguments for an alternative interpretation of the institution statute. *Batterton*, 648 F.2d at 702-03.

With neither legislative rulemaking procedure nor *Chevron* deference, PTAB precedential decisions fall into the next-lower taxonomic class of "rule" within § 553, "interpretative rule." § 553(b)(A) and (d)(2).[2] An "interpretative" rule is only advisory, and an agency may not rely on an interpretative rule for force of law.[3] Provided they are not otherwise unlawful, *e.g.*, 5 C.F.R. § 1320.10, the PTAB may rely on precedential decisions as tentative or advisory rules, but may not give them binding effect to foreclose Cisco's arguments. The PTAB

---

[2] The taxonomy of rules, the degree of binding effect of interpretative rules, and how the PTAB's precedential opinions slot into the Administrative Procedure Act (or don't), is explained in a August 2019 web article of mine, *The PTAB is Not an Article III Court, Part 3: Precedential and Informative Opinions*, September 2019 update, http://ssrn.com/abstract=3258694 at pages *7-*51.

[3] *Perez*, 575 U.S. at 97 ("Interpretive rules 'do not have the force and effect of law and are not accorded that weight in the adjudicatory process.'"); *Cubanski v. Heckler*, 781 F.2d 1421, 1426 (9th Cir. 1986) ("[A]n interpretive rule is one issued without delegated legislative power. … Such rules … are essentially hortatory and instructional in that they go more 'to what the administrative officer thinks the statute or regulation means.'"); *Batterton v. Marshall*, 648 F.2d 694, 702-03 (D.C. Cir. 1980) (an agency may not rely on an interpretative rule to foreclose consideration of positions advanced by parties).

must receive Cisco's arguments, and give them whatever weight they deserve, the PTAB's inaptly-named "precedent" notwithstanding.

Since *Aqua* disparaged precedential decisions, the PTAB has designated at least 26 more.[4] ***Six days*** after *Windy City* in March, the PTAB designated two more. *Fintiv* followed *Windy City* by barely a month. Of the 26, how many were published in the Federal Register? **Zero.** How many went through statutory requirements for binding rules, APA (5 U.S.C. §§ 552(a), 553), Paperwork Reduction Act (44 U.S.C. §§ 3506, 3507), and Regulatory Flexibility Act (5 U.S.C. § 601 *et seq.*)? **Zero**. Through executive orders that require agencies to conduct cost-benefit balancing, economic impact analyses, and deregulatory review? **Zero.** In how many did the PTO seek the benefit of public comment? **One** (the rule invalidated in *Windy City*).

And yet, despite this Court's two holdings—on multiple grounds—that PTAB precedential decisions lack force of law, the PTAB continues to treat "precedential" decisions as binding. Cisco's case is one of dozens of examples since *Windy City* in March. *E.g.*, *Supercell Oy v. Gree, Inc.*, PGR2020-00038, paper 14, slip op. at 27, 2020 WL 5261304, at *12

---

[4] The Board's *Precedential and Informative Decisions* web page, https://www.uspto.gov/patents-application-process/patent-trial-and-appeal-board/precedential-informative-decisions .

(PTAB Sep. 3, 2020) (declining to consider arguments because the PTAB considers its own precedent to be "binding"). PTAB panels cite precedential opinions for "binding" weight because the PTAB's *Standard Operating Procedure 2* says so. But SOP2 is just guidance, with no force of law. Rulemaking authority only arises by statute, not guidance. *United States v. Picciotto*, 875 F.2d 345, 346 (D.C. Cir. 1989) (invalidating a regulation by which an agency purported to grant itself rulemaking authority and bypass the APA).

This Court has jurisdiction to set aside agency guidance documents when the binding effect as applied by the agency exceeds the binding effect earned by the agency's procedures. *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1023-28 (D.C. Cir. 2000). Adjudications in which an agency relies on guidance above the force of law earned by that guidance are "without observance of procedure" or "in excess of statutory limitation," 5 U.S.C. §§ 706(2)(A), (C), and this Court has jurisdiction to set them aside under *Cuozzo* and *SAS Institute*.

Likewise, the Court has jurisdiction to set aside *Standard Operating Procedure 2*, and its purported creation of binding rulemaking authority, as "in excess of statutory limitation."

## IV. Relief

Cisco's relief may be very narrow. For example, depending on resolution of other questions, the PTAB might have authority to deny institution under its *adjudicatory* authority, so long as it disregards its flawed rulemaking. *N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759, 764-65, 768-69 (1969) (though the NLRB lacked authority to use rulemaking-by-adjudication to bypass APA rulemaking procedure, it could issue the same directive in individual cases by adjudicatory order). Alternatively, the PTAB could stop digging the hole it's in, and run the *NHK*/*Fintiv* rule (and the rest of its precedential decisions) through proper rulemaking, and *then* rely on them.

Whatever path the PTAB takes to any future decision, it must do so using the legal tools—and only the legal tools—Congress gave all other agencies.

This Court has jurisdiction to set aside the May decision, and its underlying rules, in order to give the PTAB opportunity to do so.

## CONCLUSION

This Court should accept jurisdiction over Cisco's appeal, subject to Cisco raising reviewable issues in its principal brief.

Date: September 15, 2020 By: /s/ David E. Boundy

DAVID E. BOUNDY
CAMBRIDGE TECHNOLOGY LAW LLC
P.O. BOX 590638
NEWTON, MA 02459
(646) 472 9737
DavidBoundyEsq@gmail.com
*Amicus Curiae*

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This brief is 2767 words, less than the 7000 words authorized by Federal Rule of Appellate Procedure 29(a)(5), excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Federal Circuit Rule 28.1 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

This brief has been prepared in a proportionally spaced typeface, Century Schoolbook 14 pt, using Microsoft Word 2003.

Date: September 15, 2020 By: /s/ David E. Boundy
DAVID E. BOUNDY